
# IN THE UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MISSOURI
### EASTERN DIVISION

| | |
|---|---|
| **MICHAEL MERENESS,** ) | |
| ) | |
| **Plaintiff,** ) | **Case No.: 15-cv-486** |
| ) | |
| **vs.** ) | |
| ) | |
| **UNITED STATES OFFICE** ) | |
| **OF PERSONNEL MANAGEMENT,** ) | |
| ) | |
| ) | |
| **Defendant.** ) | |

## COMPLAINT-FEDERAL EMPLOYEES HEALTH BENEFITS ACT

**COMES NOW** Plaintiff Michael Mereness, by and through the under the undersigned attorney, and for his cause of action against Defendant Office of Personnel Management respectfully states the following:

## INTRODUCTION

1. Plaintiff Michael Mereness brings this suit under 5 U.S.C. § 8901 et. seq., commonly known as the Federal Employees Health Benefits Act (FEHBA), as a participant under the Compass Rose Health Plan (The Plan).

2. The plan provided for the health benefits of the employees and their covered beneficiaries, including but not limited to N.M., a dependent of Michael Mereness.

## PARTIES

3. Plaintiff Nicholas Mereness is a resident of the city of Bloomsdale, County of Ste. Genevieve, State of Missouri.

4. Michael Mereness is a participant in the Compass Rose Health Plan, a health benefits plan provided to employees of the federal government under the Federal Health Benefits Act.

5. The Plan was in full force and effect at all relevant times during the course of treatment for N.M.

6. N.M. is a minor dependent of Michael Mereness and is a covered beneficiary under the Plan.

7. Defendant Office of Personnel Management is an agency of the United States government, who may contract with qualified carriers of insurance to cover Federal Employers under 5 U.S.C. § 8901 et. seq.

## JURISDICTION AND VENUE

8. The health benefits plan at issue in this case is a governmental employee benefit plan under the Federal Employee Health Benefits Act.

9. Venue is proper in this court pursuant to 29 U.S.C. § 1132(f).

## FACTUAL ALLEGATIONS

10. Upon information and belief, InforMed was the third party administrator (TPA) for the Compass Rose Plan at issue in this case.

11. Upon information and belief InforMed Health Solutions now does business as Conifer Health Solutions, LLC.

12. N.M. has been diagnosed with Reactive Attachment Disorder, Conduct Disorder, Post-Traumatic Stress Disorder, Developmental Trauma Disorder, Depressive Episodes, Attention Deficit Hyperactivity Disorder, and Bi-Polar Disorder.

13. N.M. struggles with attachment, trust, and affiliation that caused him to have critical conflicts with peers that escalated in 2012.

14. These issues caused N.M. to require psychiatric hospitalization in February of 2012 as he underwent emergency placement in a psychiatric hospital for his own protection and the safety of others.

15. Given the circumstances surrounding his behavior both at school and at home, and given the advice of his treating professionals, N.M. was entered into a residential treatment facility, Change Academy Lake of the Ozarks ("CALO") on May 11, 2012.

16. CALO is a covered facility under The Plan as they are a freestanding residential treatment center facility approved by The Joint Commission (JCAHO).

17. Upon admission to CALO in May of 2012, N.M.'s estimated program completion date was scheduled for September 30, 2013, a total of 508 days of treatment to complete the program.

18. N.M. would stay in CALO for residential care until August of 2013.

19. Despite the recommendations and advice of the treating professionals at CALO, InforMed determined that N.M.'s stay in residential treatment was denied coverage after July 15, 2012, just 65 days after he entered the treatment facility.

20. In the letter dated September 24, 2013 InforMed notified Michael Mereness that residential services provided to N.M. after July 15, 2012 were denied.

21. In the September 24, 2013 letter, InforMed said their decision for the following reason: "Continued stay in an inpatient residential program beyond 7/15/12 is not warranted in as much as the patient does not present an ongoing threat of harm or injury to self or others at this time.

22.     On July 16, 2012, the very day that InforMed determined N.M. was not an ongoing threat of harm or injury to self or others, N.M. was placed in "safety assessment" at Calo because "Student came to staff requesting safety closeness because he felt like he was going to harm himself."

23.     On July 16, 2012, the exact date that InforMed determined N.M. was not an ongoing threat to himself, he sought help from staff because he "felt my thoughts could lead to acting on harming myself," and even reported to staff a plan on carrying out his thoughts.

24.     One week later on July 23, 2012 N.M. again requested staff help, reporting, "I want to hang myself."

25.     Two days later on July 25, 2012 N.M. was approached by staff after suspicious behavior.  Upon meeting with staff, N.M. admitted to staff, "I have wanted to harm myself."

26.     One month later, on August 26, 2012 N.M. was put on safety closeness for harm to himself after it was discovered he was hiding disassembled "Sharpie" markers and using them to "get high."

27.     Less than a month later on September 16, 2012 N.M. was placed on safety closeness for harm to himself after he punched two holes in the wall in his room after displeasure with an action the staff took regarding his room.

28.     On several occasions over the next few months N.M. was put on safety closeness for harm to others as a result of kicking them, running into them with objects, throwing objects at them, touching them inappropriately, pushing them, and punching walls with his fist.

29.     In November of 2012 N.M. was put on safety closeness for harm to others as he threatened to harm a staff member several times by threatening to "take a chair and hit him over the head" and/or "choke him out."

30. In late November and early December of 2012 N.M. had to have therapy sessions over his physical altercations with several other students at CALO.

31. On or about January 19, 2013 N.M. was put on safety closeness after he ran from the facility and did not return until early morning with a cut on his lower leg.

32. Just two weeks later, N.M. was put on safety closeness again for a physical altercation with another student where both students were able to land punches on each other.

33. Over the next several months N.M. would be put on safety closeness multiple times for physical altercations and comments threatening physical violence on other students at CALO.

34. Just three weeks before his discharge, N.M. was put on safety closeness for physically slapping another student in the face

35. Further, just five days before his scheduled discharge, N.M. was put on safety closeness, as an incident with a staff member led to N.M. pushing a door over a staff member's foot and severing the big toe nail, causing the staff member to be sent home due to his injury.

36. Despite these instances of actual or threatened harm to himself or others, N.M.'s treatment at CALO was denied beyond July 15, 2012.

37. Michael Mereness requested an initial review of the adverse benefit decision regarding N.M.'s treatment at CALO on March 3, 2014.

38. In his 2014 request for review of the decision, Michael Mereness provided InforMed with the records of N.M.'s treatment at CALO as well as a detailed history of N.M.'s psychological treatment and behaviors that led to N.M.'s admission to CALO.

39. Despite the additional records indicating the threat N.M. posed to himself and others over the course of treatment at issue, the denial was upheld by InforMed on May 2, 2014.

40. In the May 2, 2014 Notice of Denial of Appeal, InforMed admitted that N.M. has problems with anger, impulsivity, aggression, and interpersonal conflict. They also stated that, "However these episodes were of a low enough frequency and severity that continued long term residential treatment was not medically necessary."

41. On or about August 1, 2014 Plaintiff filed a request for review with Defendant Office of Personnel Management for review of the denial of N.M.'s residential treatment.

42. In a letter dated November 5, 2014, the United States Office of Personnel Management stated, "After reviewing your appeal, we cannot direct the Plan to provide additional benefits.

43. In the November 5, 2014 letter, the Office of Personnel Management stated, "this patient's care could have been provided at a lower level of care from July 16 forward."

44. Despite evidence in the record of the threat he posed to himself and others, the OPM found there was "no evidence" that N.M. required intensive 24 hour treatment and supervision associated with residential treatment.

45. By appealing through InforMed and then the OPM, Plaintiff Michael Mereness exhausted the administrative review process provided for him and is now able to bring this claim.

## COUNT I-BREACH OF CONTRACT

46. Plaintiff hereby incorporates by reference the above allegations as though fully set forth herein.

47. Defendant OPM wrongfully denied the continued coverage of N.M.'s residential treatment at CALO by alleging that the treatment was not medically necessary.

48. The Compass Rose Health Plan defines medical necessity as follows:

> "Services, drugs, supplies or equipment provided by a hospital or covered provider of health care services that we determine are: 1)appropriate to

diagnose or treat your condition, illness or injury; 2) are consistent with standards of good medical practice in the United States; 3) are not primarily for the personal comfort of the patient, the family, or the provider; 4) are not a part of or associated with the scholastic or vocational training of the patient; and 5) in the case of inpatient care, cannot be provided safely on an outpatient basis."

49. Plaintiff repeatedly produced medical records, correspondence, and examinations by N.M.'s treating professionals that showed the critical importance and medical necessity of providing N.M. with residential treatment.

50. Despite the observations and recommendations by his treating providers, InforMed denied the coverage of further residential treatment beyond July 15, 2012.

51. Plaintiff was denied his claim for benefits under the Plan without reasonable cause or excuse, as he provided evidence of the medical necessity of residential treatment.

52. As a result, Plaintiff has been wrongfully denied benefits and has been damaged in the amount of benefits owed to him under The Plan for the residential treatment.

WHEREFORE, Plaintiff Michael Mereness respectfully prays for judgment against Defendant United States Office of Personnel Management in an amount of unpaid benefits and for such further relief as the Court deems just and proper.

## COUNT II-Mental Health Parity Laws

54. Plaintiff hereby incorporates by reference the above allegations as though fully set forth herein.

55. At all times herein, the Mental Health Parity and Addition Act of 2008 (MHPAEA) was in effect for FEHBA health plans.

56. MHPAEA mandates group health plans and health insurance issuers to provide parity between the health benefits provided under health plans and mental health benefits needed to treat mental illnesses such as those suffered by N.M.

57. Defendant has violated MHPAEA by not providing mental health coverage that is comparable to the physical health benefits under the Plan.

58. The actions of Defendant, as outlined above, have caused damage to Plaintiff in the form of denial of payment for medical services rendered to N.M.

59. Because of this damage, Defendant is responsible to pay Plaintiff's benefits due under the terms of the Plan.

WHEREFORE, Plaintiff Michael Mereness respectfully prays for judgment against Defendant United States Office of Personnel Management in an amount of unpaid benefits and for such further relief as the Court deems just and proper.

Respectfully Submitted,

GALLAGHER DAVIS, LLP

/s/ *Matthew R. Davis*

Matthew R. Davis
2333 S. Hanley Road
St. Louis, Missouri 63144
(314) 725-1780
Fax (314) 725-0101
matt@gallagherdavis.com

Attorneys for Plaintiff